IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JOHN FLYNN, JAMES BOLAND, GERALD O'MALLEY, KEN LAMBERT, GERARD SCARANO, H. J. BRAMLETT, EUGENE GEORGE, PAUL SONGER, CHARLES VELARDO, MATTHEW AQUILINE, GREGORY R. HESS, MICHAEL SCHMERBECK, VINCENT DELAZZERO, and BEN CAPP, JR., as Trustees of, and on behalf of, the BRICKLAYERS & TROWEL TRADES INTERNATIONAL PENSION FUND, <br> 620 F Street, N.W. <br> Washington, DC 20004 <br> (202) 783-3788, <br><br> BRICKLAYERS AND ALLIED CRAFTWORKERS INTERNATIONAL HEALTH FUND <br> 620 F Street, N.W. <br> Washington, DC 20004 <br> (202) 783-3788, <br><br> INTERNATIONAL MASONRY INSTITUTE <br> 620 F Street, N.W. <br> Washington, DC 20004 <br> (202) 783-3788, <br><br> and <br><br> INTERNATIONAL UNION OF BRICKLAYERS AND ALLIED CRAFTWORKERS <br> 620 F Street, N.W. <br> Washington, DC 20004 <br> (202) 783-3788, <br><br> Plaintiffs, <br><br> v. <br><br> SULLIVAN MASONRY, INC. <br> 356 Puddledock Road <br> Charleston, ME 04422, <br><br> Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) <br><br> Civil Action No. |

**COMPLAINT**

Plaintiffs, by their attorneys, DICKSTEIN SHAPIRO LLP, complaining of the Defendant, allege as follows:

## CAUSE OF ACTION
### Jurisdiction and Venue

1. This is an action brought by the fiduciaries of the Bricklayers & Trowel Trades International Pension Fund ("IPF" or "Fund"), to enforce the terms of the Plan and Trust Agreements adopted by the IPF and the provisions of the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), and the Labor Management Relations Act ("LMRA"). This action arises under the laws of the United States, specifically Section 502(a)(3), 502(g)(2), and 515 of ERISA, 29 U.S.C. §§ 1132(a)(3), 1132(g)(2), 1145, and Section 301 of the LMRA, 29 U.S.C. § 185. Pursuant to Section 502(e)(1) of ERISA, 29 U.S.C. § 1132(e)(1), jurisdiction is therefore conferred on this Court as to the claims brought on behalf of the IPF, the Bricklayers & Allied Craftworkers International Health Fund ("IHF"), and the International Masonry Institute ("IMI"). As to the claims brought on behalf of the International Union of Bricklayers and Allied Craftworkers ("BAC"), jurisdiction is conferred under Section 301(c) of the LMRA, 29 U.S.C. § 185(c).

2. The IPF, IHF, and IMI are administered in the District of Columbia. Venue for the claims asserted by the IPF, IHF, and IMI is conferred on this Court pursuant to Section 502(e)(2) of ERISA, 29 U.S.C. § 1132(e)(2), which provides:

> (2) Where an action under this subchapter is brought in a district court of the United States, it may be brought in the district where the plan is administered, where the breach took place, or where a defendant resides or may be found, and process may be served in any other district where a defendant resides or may be found.

2202527.01

BAC maintains its principle office in the District of Columbia. Venue for the claims asserted by the BAC is therefore conferred on this Court pursuant to Section 301(c)(1) of the LMRA, 29 U.S.C. § 185(c)(1).

### Parties

3.      Plaintiffs, John Flynn, James Boland, Gerald O'Malley, Ken Lambert, Gerard Scarano, H. J. Bramlett, Eugene George, Paul Songer, Charles Velardo, Matthew Aquiline, Gregory R. Hess, Michael Schmerbeck, Vincent DeLazzero and Ben Capp, Jr., are Trustees of, and sue on behalf of, the IPF. The IPF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37). Plaintiffs bring this action on behalf of, and for the benefit of, the beneficiaries of the IPF in their respective capacities as fiduciaries.

4.      The IPF is also authorized to effect collections on behalf of the IHF, IMI and BAC, pursuant to a written Assignment of Claims and the *Collection Procedures of the Central Collection Unit of the Bricklayers and Allied Craftworkers* ("Collection Procedures").

5.      Plaintiff, IHF is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

6.      Plaintiff, IMI, is an "employee benefit plan" within the meaning of Section 3(3) of ERISA, 29 U.S.C. § 1002(3), and is a "multiemployer plan" within the meaning of Section 3(37) of ERISA, 29 U.S.C. § 1002(37).

7.      Plaintiff, BAC, an unincorporated association, is a labor organization within the meaning of 29 U.S.C. § 152(5) and is entitled to bring suit under 29 U.S.C. § 185.

8.      Defendant, Sullivan Masonry, Inc., is, and at all times hereinafter mentioned was, a company maintaining offices and conducting business in the state of Maine.

9.      Defendant employs or has employed members of the International Union of Bricklayers and Allied Craftsmen and its affiliated local unions ("Union").

## Violation Charged

10.     Sullivan Masonry, Inc., acting through its authorized agent or officer, executed a collective bargaining agreement with the Union.     That collective bargaining agreement is annexed hereto as Exhibit A and is hereinafter referred to as the "Agreement".

11.     Pursuant to the Agreement, Defendant agreed to make certain payments to the IPF, IHF, IMI, and BAC on behalf of covered employees of Defendant.

12.     Having submitted some contributions, Defendant has demonstrated an awareness of the obligation to make those payments.

13.     Upon information and belief, Defendants have failed to properly submit required reports and contributions for hours worked pursuant to the Agreement.

14.     Plaintiffs seek to conduct an audit of Defendant's books and records in order to determine any amounts which may be owed for work covered by the Agreement.

15.     Under the terms of the Plan and Trust Agreement adopted by the IPF Board of Trustees, the CCU Procedures and Supreme Court precedent, Plaintiffs are entitled to conduct an audit of the books and records of Defendant to determine whether contributions have been made in compliance with Defendant's obligations.

16.     Under the terms of the Plan and Trust Agreement adopted by the IPF Board of Trustees, Plaintiffs are entitled to recover any delinquent contributions found due by the audit, as well as interest, calculated at 15 per cent per annum, and the greater of either liquidated damages, calculated at 20 percent, or an additional computation of interest, on the aforementioned delinquent contributions.

2202527.01

17.    Despite several requests by the IPF, or a representative of the IPF, for access to Defendant's books and records so that the IPF auditor can determine whether contributions have been made in compliance with Defendant's obligations, Defendant has failed to grant the IPF auditor such access to their books and records.

18.    Accordingly, Plaintiffs have been forced to estimate the amounts due the IPF, IHF, IMI and BAC by Defendant.

19.    The total of estimated contributions due the IPF, IHF, and IMI by Defendant for work performed during the months of January 2004 through December 2006 amounts to $46,195.48.

20.    Under the terms of the Plan and Trust Agreements adopted by the IPF, IHF, and IMI, interest in the amount of $11,481.24 and an additional computation of interest in the amount of $11,481.24 calculated from the Due Date at the rate of 15 percent per annum as provided for by ERISA, have been assessed on the estimated delinquent contributions payable to the IPF, IHF, and IMI for work performed by Defendant's employees during the time period January 2004 through December 2006.

21.    Defendant also is estimated to owe the BAC dues checkoff moneys in the amount of $1,732.96, and interest in the amount of $387.20, for work performed by Defendant's employees during the time period January 2004 through December 2006.

22.    To date the delinquent contributions, interest and statutory damages believed due and owing have not been paid.

23.    Plaintiffs have brought this action in faithful performance of the fiduciary duties imposed upon them under Section 404(a)(1) of ERISA, 29 U.S.C. § 1104(a)(1). Plaintiffs

2202527.01

have been, and are, incurring additional attorney's fees as a direct result of Defendant's failure to make contributions in accordance with the terms and conditions of the Agreement.

WHEREFORE, Plaintiffs pray for judgment against Defendant as follows:

1.   For an order directing Defendant Sullivan Masonry, Inc. to turn over to Plaintiffs' auditor its books and records for the time period January 2004 through the present including, but not limited to, payroll records and the general ledger(s).  Plaintiffs will suffer irreparable injury in the absence of such injunctive relief and there is no adequate remedy at law.

Plaintiffs seek an order granting it:

a.   Preliminary injunctive relief and

b.   Permanent injunctive relief.

2.   For any additional amounts determined owed the IPF, IHF, IMI and BAC by Defendant, which are not yet ascertainable until an audit is conducted.

3.   For an amount not less than $71,628.12, which is constituted as follows:

a.   for estimated delinquent contributions in the amount of $46,195.48 due on hours worked by Defendant's employees during the months of January 2004 through December 2006 (ERISA Section 502(g)(2)(A));

b.   for interest in the amount of $11,481.24 on such estimated delinquent contributions calculated at the rate of 15 percent per annum from the Due Date.  (ERISA Section 502(g)(2)(B));

2202527.01

c.  for an additional calculation of interest in the amount of $11,481.24 at the rate of 15 percent per annum calculated from the Due Date, assessed on such estimated delinquent contributions.  (ERISA Section 502(g)(2)(C));

d.  for estimated dues checkoff in the amount of $1,732.96 due on hours worked by Defendant's employees during the months of January 2004 through December 2006 and interest in the amount of $387.20 on such delinquent dues checkoff.  (CCU Procedures);

e.  for the costs of filing this action in the amount of $350.00 (ERISA Section 502(g)(2)(D));

4.  In the amount of Five Thousand Dollars ($5,000.00), and such additional amounts as may be incurred, representing attorney's fees and costs of this action (ERISA Section 502(g)(2)(D)).

5.  That Defendant be directed to comply with its obligations to correctly report and to contribute to the IPF, IHF, IMI, and BAC all additional reports and contributions due and owing, and to pay the costs and disbursements of this action.

6.  Such other relief as this Court deems appropriate, including judgment for any contributions and/or interest thereon that may accrue subsequent to the filing of this complaint, as well as any resulting statutory damages thereon under ERISA.

Dated: February _13_, 2007

By: _____
Ira R. Mitzner, DC Bar No. 184564
DICKSTEIN SHAPIRO LLP
1825 Eye Street, NW
Washington, DC  20006
(202) 420-2200

Attorneys for Plaintiffs

7

2202527.01

ME9596

RECEIVED MAY 0 9 1995

AGREEMENT

BETWEEN THE

INTERNATIONAL UNION OF BRICKLAYERS & ALLIED CRAFTSMEN

LOCAL #1 NORTHERN NEW ENGLAND

and

SIGNATORY CONTRACTORS

EFFECTIVE: MAY 1, 1995
EXPIRES: APRIL 30, 1996

## INDEX

SEVERABILITY...............................................1
OBJECT.....................................................1
TERRITORIAL JURISDICTION...................................2
WAGES......................................................3
CRAFT CLASSIFICATIONS OF BRICKLAYERS AND MASONS............4
HEALTH, WELFARE, PENSION AND ANNUITY FUNDS.................5
INTERNATIONAL MASONRY INSTITUTE TRUST......................6
DUES DEDUCTIONS............................................6
PAYMENT OF WAGES AND HOURS OF WORK.........................7
SUBCONTRACTING.............................................9
CHAPTER REPRESENTATION AND STEWARDS........................9
TERMS OF EMPLOYMENT.......................................10
ADDITIONAL TERMS OF EMPLOYMENT FOR CEMENT FINISHERS.......13
ADDITIONAL TERMS OF EMPLOYMENT FOR PLASTERERS.............14
NO STRIKE OR LOCKOUT CLAUSE...............................16
APPRENTICES..............................................16
PROCEDURE FOR SETTLEMENT OF GRIEVANCES OR DISPUTES........16
CRAFT JURISDICTION.......................................17
BRICK MASONRY............................................17
REFRACTORY WORK..........................................20
STONE MASONRY............................................20
ARTIFICIAL MASONRY.......................................22
POINTING, CAULKING, AND CLEANING.........................23
CEMENT MASONRY...........................................25
PLASTERING...............................................25
TILE LAYERS' WORK........................................26
FINISHERS' WORK..........................................27
EXPIRATION...............................................27
AGREEMENT................................................28

1

## SEVERABILITY

It is the intent of the parties hereto to abide by all applicable Federal and State statutes covering the subject matter of this Agreement. Should any provision or provisions of this Agreement be determined to be contrary to any such State of Federal statute, then such provision or provisions shall continue in effect only to the extent permitted and all other provisions of this Agreement shall remain in force and effect. In the event that any provision or provisions are finally determined to be invalid, the parties shall meet without delay for the purpose of determining substitute provisions which comply with all applicable Federal and State statutes and which accomplishes the same purpose, or substantially the same purpose, as the provisions declared invalid. Said substitute provisions shall thereupon be incorporated in this Agreement in lieu of the provisions declared to be invalid.

## OBJECT

In order to insure the public against conditions of the past, to prevent strikes or lockouts and to insure a peaceable adjustment and settlement of any and all disputes and differences that may arise between any of the parties to this Agreement without stoppage of work, and to bring about as near as possible at this time uniform conditions that will tend to stabilize and encourage union construction, alteration and repair of buildings, both parties have entered this Agreement.

# ARTICLE I

## Territorial Jurisdiction

This Agreement shall cover all work within the territorial jurisdiction of each Chapter as granted by the International Union of Bricklayers and Allied Craftsmen.

The present territorial jurisdiction of each Chapter is outlined below:

**Section 1.**  Maine

    A.    Portland Chapter -- the counties of Androscoggin and Cumberland; the counties of Knox, and Lincoln; the counties of Sagadahoc and York.

    B.    Bangor Chapter -- the county of Aroostook; portions of the county of Franklin; the county of Hancock; the county of Kennebec; the counties of Penobscot, Piscataquis, Somerset, Waldo, and Washington.

**Section 2.**  New Hampshire

    A.    Entire state, all counties included.

**Section 3.**  Vermont

    A.    Entire state, all counties included.

3

## ARTICLE II

### WAGES

**Section 1.** The hourly rate of wages and fringe benefit contributions to be paid by each Employer for all Employees covered by this Agreement who works within the territorial jurisdiction of each Local Chapter, as stated in ARTICLE I shall be as follows:

| EFFECTIVE DATE | TOTAL | WAGES | IHF | IPF | LPF | IMI/AT | IMI |
|---|---|---|---|---|---|---|---|
| **A. MAINE, CHAPTER-PORTLAND** | | | | | | | |
| 5/1/95 | 21.20 | 16.20 | 2.75 | 1.85 | --- | .20 | .20 |
| DD = .84 | | | | | | | |
| **B. MAINE, CHAPTER-BANGOR** | | | | | | | |
| 5/1/95 | 23.08 | 17.58 | 2.75 | 1.35 | 1.00 | .20 | .20 |
| DD = .84 | | | | | | | |
| **C. NEW HAMPSHIRE CHAPTER** | | | | | | | |
| 5/1/95 | 23.53 | 18.88 | 2.75 | 1.50 | --- | .20 | .20 |
| DD = .84 | | | | | | | |
| **D. VERMONT CHAPTER** | | | | | | | |
| 5/1/95 | 23.15 | 18.50 | 2.75 | --- | 1.50 | .20 | .20 |
| DD = .84 | | | | | | | |

**E.** Deducted from net wages after taxes:
DD = Local and International Union dues deductions

**F.** Definitions of abbreviations used above:

IHF = International Health Fund
IPF = International Pension Fund
LPF = Local Pension Fund
AF = Annuity Fund
IMI/AT = International Masonry Institute Apprenticeship Fund
IMI = International Masonry Institute

## Craft Classifications

The Craft classifications of Bricklayers and Masons used throughout this Agreement shall represent any of the following: Stone Mason, Cement Mason, Plasterer, Marble Mason, Tile Layer, Terrazzo Worker, and Cleaner, Pointer, Caulker.

**Section 1.**    Each Chapter shall have the option to divert monies from wages to any of the Funds upon thirty (30) days prior written notification to the Employers signatory hereto.

**Section 2.** There shall be only one (1) hourly rate of wage paid to journeymen Bricklayers and Masons on the same job.    Bricklayers or Masons, other than foremen, under this Agreement shall not be required to check units or measure or count, any amount of work performed during the day or any day of the work week.

**Section 3.** When a contractor or other Employer violates this Agreement scale of wages by paying a higher rate of wages, he shall be obliged to pay the higher rate of pay to all Bricklayers and Masons employed on his job.   The higher wage rate shall continue in effect until the completion of the job and in no event can a rate of wage so established be reduced on that job.

**Section 4.** When a Bricklayer or Mason is hired and told to bring his tools to the job and is not put to work, weather permitting, he shall receive two (2) hours wages.

Any Employee reporting for work on any shift, weather permitting, shall receive two (2) hours show-up time, unless notified not to report the day before by his foreman.

Any Employee reporting for work in winter weather where they are expected to report for work daily and are requested to remain at the job site, shall receive two (2) hours wages if the job fails to start on or before 10:00 a.m.

**Section 5.** Wages on smoke stacks, free standing chimneys and silos of any type shall be consistent with those wage rates provided in the BAC National Stack Agreement.

**Section 6.** When two (2) or more Bricklayers or Masons are hired on a job, one (1) shall be designated as the foreman.

**Section 7.** The foreman shall be paid a minimum of one dollar ($1.00) per hour above the journeymen's rate.   When his crew of Bricklayers or Masons consists of nine (9) or less, he shall also be permitted to work with the tools of the trade. He shall be paid on a straight time basis.

**Section 8.**    Foremen having the authority to hire, discharge and exercise supervisory functions are recognized as the exclusive representatives of management.   Foremen shall be practical mechanics in the branch of trade over which they exercise supervision and members of the International Union of Bricklayers and Allied Craftsmen.

5

## ARTICLE III

## Health, Welfare, Pension and Annuity Funds

**Section 1.** The parties hereto jointly agree to accept and be bound by the provisions of the written Agreement and Declaration of Trust, and any amendments thereto, provided it does not conflict with the Collective Bargaining Agreement and/or provided the Collective Bargaining Agreement does not conflict with any federal law or Department of Labor and IRS Regulations applicable to fringe benefit funds and provided written notification by certified mail has been given, within sixty (60) days of such amendment becoming effective, to the Chapter and the Associations having territorial jurisdiction, both of whom are parties to the Trust Agreement of the various Health and Welfare, Pension, and Annuity Funds, hereinafter covered by this Agreement, which are:

A.    All Chapters covered by this Agreement: Agreement and Declaration of Trust dated July 3, 1988. International Health Fund.

B.    New Hampshire Chapter No. 6 and Chapter Nos. 2 and 7 International Union of Bricklayers and Allied Craftsmen Agreement and Declaration of Trust Trowel Trades Pensions Fund dated June 29, 1972.

C.    Maine Chapter No 7:

1.    Agreement and Declaration of Trust Bricklayers and Allied Craftsmen Chapter No. 7, Maine Pension fund dated January 1, 1970.

2.    Agreement and Declaration of Trust Bricklayers and Allied Craftsmen Chapter No. 7, Maine Annuity Fund dated January 1, 1984.

D.    Vermont Chapter Nos. 4 and 5: Agreement and Declaration of Trust Chapter Nos. 4 and 5 of Vermont Pension Fund dated December 1, 1976.

**Section 2.** Each Employer agrees to pay directly to the Funds of the Chapter governing the territorial jurisdiction in which the Employer's job site is located, the hourly contribution rates stated in Article II of this Agreement, or the hourly contribution rates, that may be determined from time to time in accordance with Article II Section H of the Agreement for all hours worked by each Employee, including apprentices. An overtime hour for this purpose shall be considered a single hour.

**Section 3.** (a) At the end of each work month, but not later than the twentieth (20th) day of the following month, each Employer shall submit to the funds a report containing a complete list of Employees, their names, Social Security Numbers and the number of

6

hours worked by each Employee during the respective month. In the event no Employees worked during the month, the Employer shall submit a report, attesting that no Employees worked and that this will be the Employer's final report until said Employer has reportable hours in the future. In the event that such report is a final report, the Employer shall so state on the report and shall not be required to submit a report until the Employer again has reportable hours for Employees.

(b) The failure of any Employer to make the required reports and contributions to each Fund shall make such Employer liable to each Employee damaged by such failure for whatever benefits such Employee and/or beneficiary was denied because of the Employer's failure to make the required reports and contributions , together with court costs and attorney's fees reasonably necessary in collecting such benefit and contributions from such Employer; provided however, that no Employer shall have any liability to any Employee and/or beneficiary by reason of such Employer's failure to pay the required contribution or any part thereof, which is the result of honest mistake or inadvertence.

## ARTICLE IV

### International Masonry Institute Trust

**Section 1.** Each Employer signatory hereto subscribes and agrees to be bound by the Agreement and Declaration of Trust of the International Masonry Institute Trust (IMI), including International Masonry Apprenticeship and Research and Development Trust.

**Section 2.** Each Employer agrees to pay to said Fund the amounts set forth in Article II--Wages--for each hour worked by each Bricklayer and Mason, including apprentices, covered by this Agreement. Payment shall be reported and paid monthly along with the other contributions as provided in this Agreement.

**Section 3.** Failure to contribute to the Fund shall be a violation of this Agreement.

## ARTICLE V

### Dues Deductions

The Employer shall deduct from the wages of each Employee who has signed a check-off authorization conforming to federal law, and transmit monthly to the Chapter (or to any agency designated by said Chapter for the collection of said money), the sum for each hour worked which the Chapter has specified, or specifies from time to time and so advises the Employer in writing, as the portion of each Employee's union dues to said Chapter, to its International Union, or to any other affiliate of the International Union,

subject to check-off. The sums transmitted shall be accompanied by a statement, in a form specified by the Union, reporting the name of each person whose dues are being paid and the number of hours each Employee has worked.

## ARTICLE VI

### Payment of Wages and Hours of Work

**Section 1**. The work day shall consist of eight (8) hours starting at the established time to 12:00 noon and from 12:30 to quitting time excepting five (5) minutes before noon and five (5) minutes before quitting time to return to the locker. The Employer is to establish an eight (8) hour day on Monday, Tuesday, Wednesday, Thursday, and Friday, and all time (work) performed before or beyond the established eight (8) hour workday shall be known as overtime. When the checking system is used there shall be a separate booth for Mason Employees and ten (10) minutes shall be allowed before quitting time on work which requires utilizing elevators or climbing. Necessary time will be allowed for the men to reach the working area and necessary time to reach the ground. No Employees shall be allowed to leave the job site before the lunch break, or before quitting time. A ten (10) minute coffee break will be allowed in the morning and a five (5) minute break in the afternoon. One man will be sent to procure the drinks and the breaks will commence when the drinks are brought to them.

**Section 2**. Contractors may work four (4) ten (10) hour days. On Monday through Thursday anything over ten (10) hours will be double time. Friday will be time and a half (1 1/2) for ten (10) hours and anything over ten (10) hours shall be double time.

**Section 3**. The starting time for the above workdays shall be between the hours of 7:00 A.M. AND 8:00 a.m. Once established, the starting time may not be changed unless five (5) day notice is given. These hours may be adjusted to meet special conditions and/or ordinances, and/or conditions mandated by the owner or client.

**Section 4**. Where two (2) shifts are employed, the day shift shall work the regular hours. The second shift shall work seven and one half (7 1/2) hours for eight (8) hours pay. There shall be a thirty (30) minute recess every four (4) hours on all shifts. No Employees shall be allowed to work on more than one shift in any 24 hour period except at the overtime rate of pay. There shall be a supervisor and a steward of the craft on each shift.

**Section 5**. Holidays shall be New Year's Day, President's Day, Memorial Day, Independence Day, Labor Day, Columbus Day, Veteran's Day, Thanksgiving Day, and Christmas Day. We will comply with the holidays of the area local building trades. The contractors will not request a vote by the Masons on any job to shut down the work in order to lengthen a weekend. In return the

Masons Union will alter their policy to prohibit the Masons from voluntarily taking a vote for this purpose.

**Section 6.** Wages shall be paid any time during working hours but no later than quitting time Friday. Employers shall not hold back over three (3) days pay, and wages shall be paid by check. Contractors will provide a bond to guarantee payrolls at the discretion of the Chapter representative. Contractors will arrange for check cashing services in reasonable proximity of the project. Payment of wages will be made in cash when the above is not complied with, or when wages are paid on Friday, except when layoff on Friday occurs. A stub or separate voucher shall be provided indicating company name, hours worked, rate of pay, deductions, gross and net pay. Any Employee not receiving his pay at the stipulated time shall receive waiting time at the hourly rate of wages until paid. Employees shall be paid on or before 11:00 a.m. when they do not work because of inclement weather, unless otherwise agreed with the Chapter Arbitration Committee.

**Section 7.** As to the premium cost of overtime, the contractors will pay time and a half (1 1/2) the hourly rate of pay for the first two (2) hours of overtime and double time rate of pay for any further overtime on Monday through Friday.

All work performed on Saturdays will be at time and a half (1 1/2) the hourly rate of pay, with the exception of a make-up day. A make-up day shall be a Saturday worked at regular pay in order to make up a day lost during the current week due to inclement weather. Work performed on Sundays and holidays shall be at double the hourly rate of pay.

Meal breaks are scheduled every four (4) hours. When meal breaks are deferred not more than one (1) hour, for Cement Finishers, the Employees will take a normal thirty (30) minute break. After this deferred period, premium pay will be paid for the meal break.

**Section 8.** If any Employee wishes to leave his job, he shall receive his pay in full before quitting time, provided he has given his supervisor or Employer at least seven and one half (7 1/2) hours notice.

**Section 9.** When Employees are laid off for any cause, they shall be paid in full, in cash or by check, one half (1/2) hour before quitting time. No persons laid off shall receive less than eight (8) hours pay.

9

# ARTICLE VII

## Subcontracting

**Section 1.** The Employer agrees that in the event he shall subcontract any item of work contained in his prime contract, which is within the craft jurisdiction of the District Council, and which is to be performed on the job site proper, he shall provide in the subcontract that the subcontractor shall assume the terms and conditions of this Agreement.

**Section 2.** No Employer shall contract work by the thousand, or lump work of any character covered by Bricklayer's or Mason's work, or work for any person or persons who contract work by the thousand, or lump work of any character, taken from Employers, without furnishing materials.

**Section 3.** All contractors and foremen starting work covered by this Agreement within the jurisdiction of the Chapter signatory hereto, shall notify the Business Manager five (5) working days before the work is to commence and for the purpose of a pre-job meeting.

# ARTICLE VIII

## Chapter Representation and Stewards

**Section 1.** The Chapter Representative may visit any project under construction.

If the Chapter Representative is barred from any job while in the performance of his duties, no member shall be allowed to work on said job.

**Section 2.** The Chapter Representative shall furnish a shop steward for all jobs within the jurisdiction of this Agreement.

**Section 3.** Should an Employer determine to lay off or discharge a shop steward, he shall so notify the Chapter Representative, who shall immediately investigate the matter and notify the Employer of his decision at that time.  If the parties are unable to reach agreement, the justifiability of the Employer's proposed action shall be submitted, within forty-eight (48) hours, to the American Arbitration Association and said Arbitrator shall render a decision within forty-eight (48) hours following the hearing.  Pending a final determination under arbitration, the steward shall continue to work.

**Section 4.** The shop steward shall keep the key to the locker on his person at all times, and see to it that the locker is opened and closed before starting time and quitting time.  The shop steward shall be allowed a reasonable amount of time to take care of the locker and fulfill his duties during working hours.

10

**Section 5.** The shop steward shall have the right to inspect all scaffolding before the Bricklayers or Masons are allowed to work on it.

**Section 6.** The shop steward may accompany any injured or sick Bricklayer or Mason, and the shop steward shall be paid for any lost time in so doing on day of injury.

**Section 7.** The shop steward shall be allowed as much time as necessary in fulfilling his duties as shop steward on each job. When on hundred (100) or more Bricklayers and/or Masons are employed, there will be a deputy steward appointed.

**Section 8.** The shop steward in the performance of his duties shall be the last man on the job, other than the foreman.    It is compulsory that the shop steward work while there is work to be done on the job which he is capable of performing.

**Section 9.** For the purpose of determining compliance with this Agreement, the Chapter Representative of a Local Union shall have the right to inspect payroll checks on the jobsite.

## ARTICLE IX

### Terms of Employment

**Section 1.** The Employer agrees that it shall be a condition of continued employment for an Employee to become and remain a member of the union after seven (7) days of the signing of this Agreement or after seven (7) days after the commencement of his employment, whichever is later.

**Section 2.** When work on any job stops, for any reason, and then is resumed, Employees who are laid off on this account shall be given preference to return to work on that job.

**Section 3.** There shall be no lost time on the day of injury, or on day or days during the term of his employment when a Bricklayer or Mason is requested by the attending doctor of the Employer's insurance company to return for treatment for an injury received on the Employer's job.

**Section 4.** Before the commencement of masonry operations, the Employer shall provide on the ground floor level and every fifth (5th) floor above, a suitable locker for the exclusive use of Bricklayers and Masons.    This locker shall be adequately lighted and shall be adequately heated from October 1st to April 15th, said locker to be equipped with a lock and keys.    The Employer shall be responsible for the loss of tools and work clothing lost in case of fire or in case of breaking and entering.

**Section 5.** The Employer shall provide clean, covered potable drinking water containers with spigot and sanitary drinking cups. No open buckets or dippers shall be allowed.

**Section 6.** There shall be no lost time for scaffolds or stocking of scaffolds. Ladders must be attached to all scaffolding four (4) feet high or over.

**Section 7.** When Bricklayers and Masons are working where structural iron workers or any other trades are at work above them, proper overhead covering must be provided before men are assigned to that area. If proper covering is not provided within a reasonable time, Bricklayers and Masons will not be permitted to work on the job.

**Section 8.** Wherever practical, any method or device may be used in the construction of masonry work, provided that such methods and devices fall within the work jurisdiction of the members of the International Union of Bricklayers and Allied Craftsmen and are not expressly covered in other parts of this Agreement.

**Section 9.** On all masonry when blocks are used, whether said blocks be of cement, cinders or terra cotta, and are in sizes 8 x 8 x 16 inches, 8 x 12 x 16 inches, 12 x 12 x 12 inches, and also where any substitutes are used for the materials mentioned above, which are equal in size or weight or larger, two Bricklayers shall work as a team in lifting and laying of all said materials starting with the first course of masonry. Scaffolding for these materials shall be no higher than four (4) feet (for scaffolding height). Walls shall not exceed four (4) feet eight (8) inches in height except for units over 8 x 8 x 16 inches, which shall not exceed four (4) feet.

**Section 10.** Any unit described above larger than 8 x 12 x 16 inches, the wall height shall not exceed forty (40) inches.

**Section 11.** All blocks smaller than 8 x 8 x 16 inches shall be laid by one man. Scaffold height for these materials shall be no higher than four (4) feet eight (8) inches.

**Section 12.** A line must be pulled on the face of all walls over four (4) feet in length and on both sides of walls more than one unit in thickness.

**Section 13.** The line may not be raised more than one (1) course at a time unless some obstacle interferes with it. No man shall work ahead of the line, except men on the leads and the men of the trigging. The trigging men shall be permitted to lay three (3) courses above the line.

**Section 14.** Bricklayers and Masons who work on jobs and expose themselves to extreme temperatures or work with black mastics or any other materials that may be injurious to health shall be allowed sufficient time to wash up before eating lunch and before quitting time. All cleaning material shall be furnished by the Employer.

**Section 15.** In order to maintain a sufficient number of skilled mechanics in the Chapter, a fair percentage of the journeymen employed on all jobs subject to this Agreement shall be members of the Local Chapter having territorial jurisdiction over the job.

**Section 16.** All scaffold shall conform with scaffolding erection standards as required by U. S. Department of Labor O.S.H.A.

**Section 17.** Stocking of material on staging shall not be over 4' above the area where the Bricklayers or Masons are working. this Section shall not preclude the pre-stocking of material on staging. No stock is to be placed on the two planks that the Bricklayers work on.

**Section 18.** No overhand work shall be permitted. Scaffolds will be built on both sides of all walls more than one (1) unit in thickness, wherever possible.

**Section 19.** All Bricklayers and Masons shall be provided with adequate safety devices when working on saws and when cutting out with pneumatic hammers or hammer and chisel, such as goggles, respirators, fans for removal of dust, protection from drafts and dampness.

**Section 20.** All dry saws used for masonry must be equipped with a vent including an exhaust fan to the outside of the building. Men working on dry saws must be furnished goggles, respirator, and other safety equipment as may be required.

**Section 21.** All wet saws used in masonry shall be kept in a warm, clean, dry, and covered place when being used. Bricklayers or Masons working wet saws shall be supplied with rubber aprons, rubber gloves, rubber boots, goggles or glasses and other equipment necessary for the operation of a wet saw. The Employee operator of all wet or dry saws shall be paid twenty-five ($.25) cents per hour above the regular rate of wages.

**Section 22.** All suspended stagings shall be three (3) feet below the top of the brick wall at all times.

**Section 23.** A ratio of five (5) journeymen to one (1) apprentice shall be used on working and cleaning of brick work. Apprentices shall not be assigned to other than masonry work.

**Section 24.** Apprentices shall not work on a masonry cutting saw or cleaning down masonry walls or fastening masonry anchors or applying waterproofing material for an unreasonable length of time in accordance with the standards set by the Joint Apprenticeship Committee.

**Section 25.** In all guniting operations, the handling and control of the nozzle, regardless of size, when applying any refractory material shall be on the same terms and conditions of employment as apply to hand applied work, except the Nozzle Operator shall

13

receive a premium of twenty-five ($.25) cents per hour above the journeyman's rate.

**Section 26.** The Employer agrees to conform to all rules and regulations prescribed by the Occupations Safety and Health Act.

## ARTICLE IX-A

### Additional Terms of Employment for Cement Finishers

**Section 1.** The setting of all strips and grades in connection with the laying of cement and other plastic material flooring and the running of all bases including the setting of temporary grounds for same.

**Section 2.** The setting of all glass in rooms and sidewalk lights, whether set in cement or asphalt.

**Section 3.** The application and finishing of all cement or other plastic materials that may be used for damp or waterproofing purposes that are applied with a trowel.

**Section 4.** The finishing of copings, sills and steps of plain concrete and the pouring and finishing of artificial stone.

**Section 5.** The pointing and patching of all steel or metal window frames that touch concrete.

**Section 6.** All types of magnesite composition flooring.

**Section 7.** The operation of all machines in connection with cement masonry.

**Section 8.** No concrete for finish to be poured unless Cement Masons are on the job.

**Section 9.** When working overtime after 6:30 p.m., a paid one-half (1/2) hour break shall be allowed for supper.

**Section 10.** Any work done during the noon lunch period shall be paid at the rate of time and one half (1 1/2).

**Section 11.** Screeds shall be set up by the Cement Masons for all finish concrete.

**Section 12.** All cement work shall be performed in a thorough, workmanlike manner.

**Section 13.** Cement Finishers working with power grinding machines shall receive fifty cents ($.50) per hour above the regular hourly wage rate. The contractor shall provide ventilation or blowers to remove dust whenever a Cement Finisher is required to grind in a confined area.

14

**Section 14.** Cement Finishers shall not be expected to work in the rain without suitable rain gear supplied by the contractor.

**Section 15.** Two (2) Cement Finishers shall work as a team at all times on the straight edge up to ten (10) feet, three (3) men up to fourteen (14) feet, four (4) men up to sixteen (16) feet, and five (5) men up to twenty (20) feet. The foregoing shall not apply to mechanical screeding devices.

**Section 16.** The slump shall be controlled in accordance with the specifications.

**Section 17.** Laying out, screeding and finishing of all cement, concrete, brown stone composition, mastic and gypsum materials, also for fireproofing, waterproofing, cement and composition base and vault light. The cutting of all cement and concrete for patching and finishing, with the exception of the preparation of a concrete surface to receive waterproofing when such surface is prepared with a double edged two (2) handed chipping hammer. The bush hammering of all concrete cast in place. The operation of the cement gun, the nozzle and the finishing of all material applied by the guns, also the operation of the cement floor finishing machines and concrete cutting machines. The Cement Mason shall have the right to use all tools as directed by the Employer.

## ARTICLE IX-B

### Additional Terms of Employment for Plasterers

**Section 1.** All work shall be executed in a thorough, workmanlike manner, all wire and metal lath shall be given a good scratch coat which shall not be browned the same day. Scratch coat shall be thoroughly set before applying brown coat.

**Section 2.** Keen's Cement and other smooth troweled finished shall be gauged by the plasterer.

**Section 3.** Keen's Cement shall not be adulterated with any gypsum product.

**Section 4.** All angles shall be straightened with a bevel edge as required.

**Section 5.** Float Sand Finishes shall be applied evenly over a brown coat, well floated and brought to an even surface.

**Section 6.** All surfaces to be plastered shall be prepared by the plasterer when such surfaces require a bonding agent.

15

**Section 7.** All brown coat shall be screeded, rodded, darbied, and hand floated.

**Section 8.** Men who apply brown coat, mineralite or thin coat shall straighten and float it. Men who gauge finish coat shall apply it, trowel it and brush it.

**Section 9.** All interior and exterior plastering of Portland Cement, stucco, imitation stone, or any other patent or plastics shall be the work of the plasterers.

**Section 10.** The sticking and pointing of ornaments and the processing or sticking of artificial stone shall be the work of plasterers.

**Section 11.** The casting, running, stocking, nailing, or screwing in place of plaster or composition caps and ornaments is the work of the plasterers.

**Section 12.** The bull noses shall be run in place with a mold.

**Section 13.** All cornices that can be run in place shall be run in place on the job.

**Section 14.** The making of all molds for plaster model making, finishing plaster models, preparing all models for casting, and casting of same shall be the work of the plasterers.

**Section 15.** Suitable wooden tools shall be furnished by the Employer on all jobs.

**Section 16.** All tools shall be cleaned before 4:30 p.m. All work shall be finished and left in a workmanlike manner by 4:20 p.m.

**Section 17.** No plasterer will be allowed to work in any building that is not properly heated.

**Section 18.** All scratch coat on walls and ceilings where Mosaic and Terrazzo is to be applied shall be done by plasterers with an allowance of not less than one-half (1/2) inch bed to be conceded to Mosaic Terrazzo workers.

**Section 19.** Where there are more than two (2) bathrooms on a job (to be tiled by a tilelayer), the scratch coat is the work of the plasterer).

**Section 20.** Except for fireproofing and soundproofing, all browing with machines which is to receive a finish coat must be done between screeds the same as hand applied.

16

## ARTICLE X

### No Strike or Lockout Clause

The parties agree that there shall be no lockouts by the Employer nor any strikes or stoppage of work by the Chapter, except for nonpayment of wages, including contributions to the health and welfare, pension, and training funds, and any other funds provided for in this Agreement.

## ARTICLE XI

### Apprentices

Apprentices' rate of pay shall be as follows, and not less than the percentage of the journeyman rate as outlined hereunder:

| First six months (6) - 50% | Second six months (6) - 60% |
| Third six months (6) - 70% | Fourth six months (6) - 80% |
| Fifth six months (6) - 90% | Sixth six months (6) - 95% |

These are minimum rates; rates higher than those specified are permissible upon mutual agreement between the Employer and Apprentice.

## ARTICLE XII

### Procedure for Settlement of Grievances or Disputes

In the event that any grievances or disputes are not satisfactorily settled by the steward and the superintendent, or the foreman in charge, within twenty-four (24) hours from the time they are reported, they shall be referred to the business representative of the union, who shall attempt to adjust said grievances or disputes.

Any and all disputes, stoppages, suspensions of work, and any and all claims, demands or action resulting therefrom shall be submitted to arbitration before an arbitrator mutually agreed upon. If the parties are unable to agree upon an arbitrator, the arbitrator shall be appointed by the American Arbitration Association in accordance with its Voluntary Labor Arbitration Rules.

17

## ARTICLE XIII

## Craft Jurisdiction

It is agreed that Bricklayers' work shall include, but not be limited to the following:

**Section 1. Brick Masonry**--Bricklaying masonry shall consist of the laying of bricks made from any material in, under or upon any structure or form of work where bricks are used, whether in the ground, or over its surface, or beneath water; in commercial buildings, rolling mills, iron works, blast or smelter furnaces, lime or brick kilns; in mines or fortifications, and in all underground installation of substitutes for bricks such as: All carbon materials, Karbate Impervite or mixtures.    All acid resistant materials.    All terra cotta and porcelain materials, except where the foregoing materials are manufactured to substitute for tile as provided for under the category of Section 9 or Article XI, of the International constitution.    All cutting of joints, pointing, cleaning and cutting of brick walls, fireproofing, blockarching, terra cotta cutting and setting of all tile, plaster, mineralwool, cork blocks, and glassmasonry, or any substitute for above materials, the laying of all pipe sewers or water mains and the filling of all joints on the same when such sewers or conduits are of any vitreous materials, burnt clay or cement, or any substitute material used for the above purpose, the cutting rubbing, and grinding of all kinds of brick and the setting of all cut stone trimmings on brick buildings and the preparations and erection of plastic, castables or any refractory materials is Bricklayers' work.

Cleaning, grouting, pointing, and other work necessary to achieve and complete the work under the foregoing category shall be the work of the Bricklayer.    All waterproofing and black mastic waterproofing, silicone and/or substitute sandwiched between masonry units in the interior of the wall be recognized as Mason's work.

All terra cotta called unit tile in sizes over 6" x 12" regardless of method of installation.    All quarry tile over 9" x 9" x 1 1/4" in size, split brick or quarry tile or similar material if bedded and jointed with one operation.    The bedding, jointing and pointing of the above material shall be the work of the craft installing same.

All burnt clay extruded cellular products regardless of trade name or method of installation when used as a veneer on structures.

All clay products known as terra cotta tile, unit tile, ceramic veneer and machine made terra cotta and like materials in sizes larger than 6" x 12", regardless of the method of installation.

Where the preponderance of material to be installed is of the above

18

sizes, and when material of lesser size is to be used in connection therewith, the Bricklayers shall install such materials.

All of the Work Operations specifically listed and referenced below shall be recognized as the work assignments of the Bricklayers and Allied Craftsmen under the terms of this Agreement.

The setting, grouting, and dry packing of all plates and machinery.

The grouting and filling of masonry units with insulation materials and rigid insulation installed in masonry walls.

Built in corner guards, bearing plates, and installation of loose lintels.

The installation, assembly, and erection of all masonry panels, whether brick, tile, natural stone, concrete, utilizing a light frame, steel stud back-up system.

The cleaning, rubbing down, grinding, patching, and coating with silicone or similar waterproofing material of masonry block walls, the installation, pointing, cleaning, and finishing of R-Brick, Pan-Brick, or other thin brick systems installed mechanically, the fabrication, erection, and installation of pre-assembled brick panels or other pre-assembled masonry panels, including the rigging, hooking on, signaling, bolting and/or welding, the installation of all anchors and supports and other miscellaneous hardware.

The installation of all types of wall ties and anchors, including the strap and tie of two part anchoring systems, whether screwed, nailed, shot, set with epoxy, or welded, that support masonry walls.

The laying, setting, bedding, pointing, grouting, steam cleaning, washing, spreading of asphalt and the sweeping of joints with sand, cement or stone dust of all paving units made of brick, stone, cement, precast concrete, whether such units are interlocking, laid dry or in dry pack in mortar, sand, stonedust, asphalt, mastic, or substitutes.

The installation of Nailon brick or similar burnt clay units, including the cutting, fitting, nailing on, pointing, caulking, and cleaning.

The cutting and patching of chases, channels, window and door openings or other openings in masonry walls.

The toothing of all masonry units.

The application of all types of mastic, whether troweled or rolled on masonry and concrete and the installation of all types of flashing, whether installed dry or with mastic in masonry and concrete.

ME9596

19

The placement of all insulating materials, such as Zonolite, Pearlite, substitutes, or sand into masonry walls.

The pouring/handling of the nozzle of foam machines and attaching section of board-type materials.

The installation of all insulation and substitutes where cement, mastic or other plastic adhesive materials are used, when such insulation is installed in floors, walls, partitions, roofs and ceiling insulation.

The application of insulating materials over boiler walls.

The placement of reinforcing materials, whether horizontal, vertical or otherwise, into the cavities/voids of masonry walls or any configuration. This shall include the horizontal, vertical or otherwise placement, lapping, jointing, connecting, or welding. Normal bending and/or tieing.

The placing of grout into all types of masonry walls. The Bricklayer will handle pouring of grout from a bucket or other container, and if a grout machine is used to pump this material in, the Bricklayer will handle the nozzle. If any other method is used, the Bricklayer will be the person who is responsible for the final placement of the grout into the cavity/void of the masonry wall.

The grouting of all windows, doors and access panels encased in masonry, whether installed when the masonry is constructed or bolted on at a later date.

The application of all damp and waterproofing materials, sand and cement coats, other substitute cement based materials, fireproofing materials and silicons, whether troweled or rolled on all masonry, cement, precast, or concrete.

The troweling application of mastic and other waterproofing materials on dry wall stud walls used to back up brick and other types of masonry veneer.

The operation of the water blasting machine or similar type of cleaning machines.

All exterior and interior cleaning of buildings, whether brick, stone, precast, cement, or concrete, regardless or whether water, detergent, acid, restorer, or other substitute cleaning products are used.

The sandblasting, waterblasting, or other cleaning procedure used to expose aggregate or to prepare masonry to receive a new finish.

The Bricklayer and Allied Craftsman shall have the right to use all tools necessary to complete his work, including but not limited to hand tools, power tools, electric and air hammers, or chipping guns.

### Refractory Work

The Employer agrees to assign to Employees represented the the Bricklayers and Allied Craftsmen all work which has been historically or traditionally assigned to members of the International Union of Bricklayers and Allied Craftsmen, including but not limited to: dipping, setting, buttering, bedding, handling, pointing, grouting, caulking, cutting, toothing, fitting, plumbing, aligning, laying, flagging, leveling, installation of gaskets and expansion joint material, grinding, vibrating, tamping, guniting, insulation, and spraying of all refractory materials, anchoring of all refractory materials by all means including bolting and welding, ceramic welding, removal and cleaning of masonry materials, to be reinstalled or replaced, final sandblasting or surfaces to receive additional refractory materials, installation of chemical coating, fireproofing, and membrane materials by any method required, surface spraying of all refractory materials, and cleaning of coke oven walls, chambers, and flues.   Temporary bracing in coke oven repairs.

Backfill and vibrating of all refractory materials with electrical vibrators, air vibrators or any other methods.

Use of the nozzle with refractory materials are used in furnaces, boilers, stacks, breechings, and vessels.

**Section 2**. Stonemasonry.  Stonemasonry shall consist of laying all rip rap, rubble work, with or without mortar, setting all cut stone, marble, slate or stone work (meaning as to stone, any work manufactured from such foreign or domestic products as are specified and used in the interior or on the exterior of buildings by architects, and customarily called "stone" in the trade).

Cutting all shoddies, broken ashlar or random ashlar that is roughly dressed upon the beds and joints, and range ashlar not over ten (10) inches in height; the dressing of all jambs, corners and ringstone that are roughly dressed upon the beds, joints or reveals, and the cutting of joints and pointing of stone work.

This is to apply to all work on buildings, sewers, bridges, railroads, bulkheads, breakwaters, jetties, playgrounds, parks, landscaping and curbing or other public works, and to all kinds of stone, particularly to the product of the locality where the work is being done, and the same shall be considered stonemasonry.

The erection, installation, plumbing, leveling, aligning, as well

ME9596

21

as the installation of all parts and hardware, and the anchoring, bolting and welding of all natural stone when natural stone is installed in pre-cast, metal, or glass curtain wall systems shall be the work of the Bricklayers and Allied Craftsmen.

The work of the Bricklayers and Masons on natural stone-faced steel truss panels shall include but shall not be limited to the following:

1.   All welding and/or bolting of the support steel to the building structure for the stone-faced steel truss panels.

2.   All hooking on of the stone-faced steel truss panels.

3.   All signaling and tagging of the stone-faced steel truss panels.

4.   All rigging required for the stone-faced steel truss panels.

5.   All hoisting, unloading, setting, and landing of the stone-faced steel truss panels.

6.   All final setting, including but not limited to the plumbing, leveling, and aligning of the stone-faced steel truss panels.

7.   All temporary and final welding and/or bolting of panel to panel connections.

8.   All temporary and final welding and/or bolting of the stone-faced steel truss panel connections attached to the building structure.

9.   All temporary and final welding and/or bolting of wind bracing to the building structure of the stone-faced steel truss panels.

10.  The assembly, and setting up of all lifting mechanisms used to hoist or move stone-faced steel truss panels, including but not limited to hand derricks, truck and tower cranes, cherrypickers, Chicago booms, electric and manual chain falls, power buggy, mono-rail systems, except by licensed personnel where required.

The work of the Bricklayers and Masons on natural stone uni-strut systems or similar type grid systems shall include but shall not be limited to the following:

1.   The installation of the stone support system, including the erection, plumbing, leveling, aligning, bolting, welding, and anchoring of uni-struts or other similar type grid systems.

2.   All welding of stud bolts whether by stud gun or arc welding.

3.   The installation of tubular steel, clip angles, and other parts and/or connections, whether bolted or welded.

4.   The installation, setting, shimming, landing, and anchoring of natural stone onto uni-struts or similar type grids.

5.   All final setting of natural stone, including but not limited to plumbing, leveling, and aligning.

6.   The installation of all miscellaneous hardware necessary to complete the system, regardless of the method of installation.

The fabrication and installation of limestone, granite, or other prefabricated natural stone panels, when mounted to steel or aluminum framing or set on steel struts shall be the work of the member of the International  of Bricklayers and Allied Craftsmen.

All rigging, hooking signaling, bolting and/or welding, the installation of all stone anchors and other hardware.

The Stonemasons shall have sole jurisdiction over hand derricks and other such lifting devices in connection with the setting of stone.

The cutting, dry packing, bedding, setting, pointing, rubbing, patching, grouting, grinding, steam cleaning, and washing of all precast concrete panels, columns, covers, "beams and tees."

The cutting, setting, and pointing of all concrete window mullions, steel or concrete lintels, and concrete sprandel beams, and all concrete prefabricated slabs.

The Stonemason shall have the right to use all tools necessary to complete his work, including but not limited to hand tools, power tools, electric and air hammers or chipping guns.

Stonemasons shall have the right to use all tools which they consider necessary to achieve and complete the work under the foregoing category.

In addition, such other construction work in this area that has been done, as the custom and practice by members of this Chapter.

**Section 3.  Artificial Masonry.** The cutting, setting, and pointing of cement blocks and all artificial stone or marble, either interior or exterior, when set by the usual custom of the stonemasons and marble setter. All cement that is used for backing up external walls, the building of party walls, columns, girders, beams, floors, stairs, and arches, and all material substituted for the clay or natural stone products, shall be controlled by members of the International Union of Bricklayers and Allied Craftsmen, for which the highest rate of wages shall be demanded.

All artificial masonry, the cutting, setting, and pointing of all concrete prefabricated slabs, regardless of size.

23

The erection and setting of Fiberglas stone-faced wall panels, GFRC panels and units, and other lightweight artificial stone, when said operation is a direct set from the truck to the structure, including the installation of lugs and other supporting steel and hardware, the hooking on, signaling and securing, the plumbing and aligning, grouting, patching, caulking, anchoring, bolting, and welding.

In addition, such other construction work in this area that has been done, as the custom and practice by members of this Chapter.

Bricklayers and Masons shall have the right to use all tools necessary to complete their work, including, but not limited to hand tools, power tools, electric and air hammers or chipping guns.

## Section 4. Pointing, Caulking, and Cleaning

A.    This branch of trade shall entitle the holder of a card of membership so marked to all rights and privileges anywhere in the jurisdiction of the International Union of Bricklayers and Allied Craftsmen, providing his membership is in good standing. Pointing, caulking, and cleaning of all types of masonry on brick, stone, or cement structures, including all grinding and cutting out on such work and all sand blasting, steam cleaning, and gunite work.    The caulking of all window frames or door frames encased in masonry on brick, stone, precast or cement structures.

The pointing, cleaning, and weatherproofing of all buildings, grain elevators, and chimneys built of stone, brick, and concrete.    It shall include all grinding and cutting out, sand blasting and gunite work in same.

The application, regardless of the method, of waterproofing coatings and cement base materials, with or without color, on new or old exterior or interior walls made of brick, block, stone, cement, concrete, precast or artificial masonry.

The rigging, hanging, erecting of all swing scaffold, including the setting and hanging of sky hooks, outriggers, counterweights, tie-backs, lifelines, guard rails, electric motors, and other swing scaffolding equipment.

The mixing of all caulking.

The sandblasting, water blasting, or other type of cleaning and the application of all waterproofing material and fireproofing materials in the interior of water tanks or chests, stacks, silos, chimneys, and turbines.

The application of all damp and waterproofing materials, sand and cement costs, other substitute cement based materials, fireproofing materials and silicons, whether troweled or rolled on all masonry, cement, precast, or concrete.

All epoxy injection work, whether poured by hand, pointed or injected by machine under pressure, on brick, stone, precast, cement and concrete.

The application of all chemical and epoxy coatings, including plastic coatings that combine in a matrix material and artificial aggregates of all types, which form interior-exterior decorative non-structural finishes of wide imitative and artistic effect.

Sandblasting, waterblasting, or other cleaning procedure which will be performed in connection with the pointing or caulking of a building.

The tuckpointing of oakum and polyurethane rope or other backing material into joints and into expansion joints between the top of all cement block walls and steel ceiling decks or steel beams or concrete beams or around the perimeters of windows, doors.

The cleaning and/or preparation of any natural or synthetic concrete, masonry, stone, stucco, or other material surfaces to receive the application or installation of any dampproofing, flashing, sealant, waterproofing, or water repellent systems, and/or any epoxy or other chemical decorative or protective coatings or membrane systems, and/or any epoxy or chemical injection or grouting, and/or any anchoring, pinning, patching, reinforcing, rebuilding or restorative systems or procedures.

The application, installation, or any dampproofing, flashing, sealant, waterproofing, or water repellent systems, and/or any epoxy or other chemical decorative or protective coatings or membrane systems, and/or any epoxy or chemical injection or grouting, and/or any anchoring, pinning, patching, reinforcing, rebuilding, or restorative systems or procedures on or to any natural or synthetic concrete, masonry, stone, stucco or other material surfaces are the work of the International Union of Bricklayers and Allied Craftsmen.

The installation of bituthene or other similar type waterproofing materials applied to dry wall stud walls used to back up masonry, or applied to CMU, concrete, or when used as a flashing material.

The complete installation of Volclay Panels and other similar types of waterproofing systems, above or below grades.

The application of all decorative membrane products, such as Neogard, 3M, Tremco, and similar type products, to be used either for vehicular, pedestrian, or aesthetic value.

The Bricklayer and Allied Craftsmen shall have the right to use all tools necessary to complete his work, including but not

25

limited to hand tools, power tools, electric and air hammers or chipping guns.

B.    This is not to be construed as denying the right of the Brick or Stone Masons to apply themselves at this branch of trade.

In addition such other construction work in this area that has been done, as the custom and practice by members of this Chapter.

**Section 5.** Cement Masonry--Laying out, screeding, and finishing of all cement concrete, brown stone composition, mastic and gypsum materials, also for fireproofing, waterproofing, cement and composition,base vault lights.  The cutting of all cement and concrete for patching, waterproofing, and finishing.  The bush hammering of all concrete when cast in place.  The operation of the cement gun, the nozzle, and the finishing of all material applied by the guns, also the operation of the cement floor finishing machines.  The cement mason shall have the right to use all tools necessary to complete his work.

The grinding, chipping, fills, repairs, and flash patching of all concrete floors, columns, walls, and ceilings, the application of epoxies and other substitute materials for concrete re-surfacing, patching, and underlayment, shall be the work of the Cement Mason.

The application of the retarder, the washing and finishing of all aggregate finish shall be the work of the Cement Finisher.

The Cement Mason shall have the right to use all tools necessary to complete his work, including, but [not?] limited to hand tools, power tools, electric and air hammers, or chipping guns.

**Section 6.** Plastering--All exterior or interior plastering, plain and ornamental, when done with stucco, cement and lime mortars on patent materials, artificial marble work, when applied in plastic form, composition work in all its branches, the covering of all walls, ceilings, soffits, piers, columns of any part of a construction of any sort when covered with any plastic material in the usual methods of plastering whether hand or machine applied, is the work of the Plasterer.  The casting and sticking of all ornaments of plaster or plastic compositions, the cutting and filling of cracks,  All cornices, moldings, coves and bull noses shall be run in place on rods and white mortar screeds and with a regular mold, and all substitutes of any kind, when applied in plastic form with a trowel, or substitute for same, is the work of the Plasterer.

The screwing, handling, and welding of DriVit panels shall be the work of the Plasterers and/or Masons.

The Plasterers shall have the right to use all tools necessary to complete his work, including, but not limited to, hand tools, power tools, electric and air hammers, or chipping guns.

**Section 7.** Tile Layers' Work. Tile laying shall consist of, but not be limited to, the following work procedures and installation of the following materials:

A.  The laying, cutting, or setting of all tile where used for floors, walls, ceilings, walks, promenade roofs, stair treads, stair risers, facings, hearths, fireplaces, and decorative inserts, together with any marble plinths, thresholds, or window stools used in connection with any tile work; also, preparing and setting all concrete, cement, brickwork, or other foundation or materials that may be required to properly set and complete such work; setting or bedding all tiling, stone, marble, composition, glass, mosaic, or other materials forming the facing, hearth, or fireplace of a mantel, or the mantel complete, together with the setting of all cement, brickwork, or other materials required in connection with the above work; also the slabbing and fabrication of tile mantels, counters, and tile panels of every description, and the erection and installation of same; the building, shaping, forming, construction, or repairing of all fireplace work, whether in connection with a mantel hearth facing or not, and the setting and preparing of all material, such as cement, plaster, mortar, brickwork, iron work or other materials necessary for the proper and safe construction and completion of such work, except that a mantel made exclusively of brick, marble, or stone, shall be conceded to be Bricklayers', Marble Setters', or Stonemasons' work, respectively.

B.  It will be understood that the work "tile" refers to all burned clay products, as used in the tile industry, either glazed or unglazed, and to all composition materials made in single units up to 15" x 20" x 2", except quarry tiles larger than 9" x 9" x 1 1/4", also to mixtures in tile form of cement, plastics, and metals that are made for and intended for use as a finished floor surface, whether upon interior or exterior floors, stair treads, promenade roofs, garden walks, interior walls, ceilings, swimming pools, and all places where tile may be used to form a finished surface for practical use, sanitary finish, or decorative purposes, for setting all accessories in connection therewith, or for decorative inserts in other materials.

C.  All terra cotta called unit tile in sizes of 6" x 12" or under, regardless of method of installation, quarry tile 9" x 9" x 1 1/4" or less; split brick or quarry tile or similar material where the bed is floated or screeded and the joints grouted. Where the work is installed by tile layers, the grouting and cleaning shall be supervised by the mechanic. The bedding, jointing, and pointing of the above materials shall be the work of the craft installing the same. All clay products known as terra cotta tile, unit tile, ceramic veneer, and machine-made terra cotta, and like materials in sizes 6" x 12" and less regardless of the method of installation. Where the preponderance of materials to be installed comes within the provisions of this Section and when there is also some material in excess of the sizes provided for in this Section, the Tile Setter shall install all such materials.

**Section 8.** Finishers' Work.  Finishers' work shall consist of assisting, helping, or supporting the tile, marble, and terrazzo mechanic by performing their historic and traditional work assignments required to complete the proper installation of the work covered by Sections 5, 7, and 8 of this Code.

**Section 9.** The Employer agrees to assign to Employees represented by the Bricklayers and Allied Craftsmen, all work described in Article XIII, and in addition, such other new methods or types of masonry work which may be mutually agreed upon between the parties to this agreement in the future.

## ARTICLE XV

## Expiration

**Section 1.** This Agreement will expire April 30, 1996, but if neither party to this Agreement gives notice in writing to the other party on or before February 28, 1996 that it desires a change after May 1, 1996, then this Agreement will continue in effect until April 30, 1997 and so on each year thereafter unless on or before February 28 of each year thereafter a notice is given by either party.   The parties to this Agreement jointly agree, pursuant to the above provisions of this Article to participate in joint negotiations with the International Union of Bricklayers and Allied Craftsmen Local #1 Maine, New Hampshire, and Vermont for the successor collective bargaining agreement to this Agreement.

This Agreement shall be binding upon each Employer, its successors and assigns.

**Section 2.** The Employer and the Local will bargain in good faith with respect to renewal or extension of the current or any subsequent collective bargaining agreement.

**Section 3. Voluntary Recognition**--The Employer agrees that if it has not previously done so, it will, upon the Local's submission of evidence of majority status among its Employees in the bargaining unit described herein, voluntarily recognize the Local as the exclusive collective bargaining representative of all Employees within that bargaining unit on all present and future job sites within the jurisdiction of the Local.  The Employer expressly agrees that it will not condition its recognition upon the results of an election conducted under the rules and regulations of the National Labor Relations Board.

28

## AGREEMENT

AGREED UPON BETWEEN
THE SIGNATORY CONTRACTORS AND BRICKLAYERS AND ALLIED CRAFTSMEN,
LOCAL #1 NORTHERN NEW ENGLAND, MAINE, NEW HAMPSHIRE & VERMONT,

CHAPTER REPRESENTATIVE FOR NORTHERN NEW ENGLAND:

Signed_____

Title_____

Date_____


CONTRACTOR:

Signed_____

Firm_____

Address_____

          _____

Telephone_____

Date_____

ME4576

KENNEY AND SULLIVAN INC

28

292877

O7ME

## AGREEMENT

AGREED UPON BETWEEN
THE SIGNATORY CONTRACTORS AND BRICKLAYERS AND ALLIED CRAFTSMEN,
LOCAL #1 NORTHERN NEW ENGLAND, MAINE, NEW HAMPSHIRE & VERMONT.

CHAPTER REPRESENTATIVE FOR NORTHERN NEW ENGLAND:

Signed _____

Title _____

Date __9/11/95_____


CONTRACTOR:

Signed __Kenneth Sullivan_____

Firm __Kenney + Sullivan Inc_____

Address __RR² Box 490_____
__East Corinth, Me  04427_____

Telephone __285-3572  (207)_____

Date __9/6/95_____

## I. (a) PLAINTIFFS

JOHN FLYNN, et al.

## DEFENDANTS

SULLIVAN MASONRY, INC.

(b) COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF 11001
(EXCEPT IN U.S. PLAINTIFF CASES)

COUNTY OF RESIDENCE OF FIRST LISTED DEFENDANT
(IN U.S. PLAINTIFF CASES ONLY)
NOTE: IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF
LAND INVOLVED

(c) ATTORNEYS (FIRM NAME, ADDRESS, AND TELEPHONE NUMBER)

Ira R. Mitzner (202) 420-2200
Dickstein Shapiro LLP
1825 Eye Street, N.W.
Washington, DC 20006

ATT

CASE NUMBER 1:07CV00339

JUDGE: John D. Bates

DECK TYPE: Labor/ERISA (non-employme

DATE STAMP: 02/13/2007

## II. BASIS OF JURISDICTION
(PLACE AN x IN ONE BOX ONLY)

○ 1 U.S. Government Plaintiff
◉ 3 Federal Question (U.S. Government Not a Party)
○ 2 U.S. Government Defendant
○ 4 Diversity (Indicate Citizenship of Parties in item III)

## III CITIZENSH
FOR PLAINTIFF AN

| | PTF | DFT | | PTF | DFT |
|---|---|---|---|---|---|
| Citizen of this State | ○ 1 | ○ 1 | Incorporated or Principal Place of Business in This State | ○ 4 | ○ 4 |
| Citizen of Another State | ○ 2 | ○ 2 | Incorporated and Principal Place of Business in Another State | ○ 5 | ○ 5 |
| Citizen or Subject of a Foreign Country | ○ 3 | ○ 3 | Foreign Nation | ○ 6 | ○ 6 |

## IV. CASE ASSIGNMENT AND NATURE OF SUIT
(Place a X in one category, A-N, that best represents your cause of action and one in a corresponding Nature of Suit)

○ A. Antitrust

☐ 410 Antitrust

○ B. Personal Injury/ Malpractice

☐ 310 Airplane
☐ 315 Airplane Product Liability
☐ 320 Assault, Libel & Slander
☐ 330 Federal Employers Liability
☐ 340 Marine
☐ 345 Marine Product Liability
☐ 350 Motor Vehicle
☐ 355 Motor Vehicle Product Liability
☐ 360 Other Personal Injury
☐ 362 Medical Malpractice
☐ 365 Product Liability
☐ 368 Asbestos Product Liability

○ C. Administrative Agency Review

☐ 151 Medicare Act

Social Security:
☐ 861 HIA ((1395ff)
☐ 862 Black Lung (923)
☐ 863 DIWC/DIWW (405(g)
☐ 864 SSID Title XVI
☐ 865 RSI (405(g)

Other Statutes
☐ 891 Agricultural Acts
☐ 892 Economic Stabilization Act
☐ 893 Environmental Matters
☐ 894 Energy Allocation Act
☐ 890 Other Statutory Actions (If Administrative Agency is Involved)

○ D. Temporary Restraining Order/Preliminary Injunction

Any nature of suit from any category may be selected for this category of case assignment.

*(If Antitrust, then A governs)*

○ E. General Civil (Other)   OR   ○ F. Pro Se General Civil

Real Property
☐ 210 Land Condemnation
☐ 220 Foreclosure
☐ 230 Rent, Lease & Ejectment
☐ 240 Torts to Land
☐ 245 Tort Product Liability
☐ 290 All Other Real Property

Personal Property
☐ 370 Other Fraud
☐ 371 Truth in Lending
☐ 380 Other Personal Property Damage
☐ 385 Property Damage Product Liability

Bankruptcy
☐ 422 Appeal 28 USC 158
☐ 423 Withdrawal 28 USC 157

Prisoner Petitions
☐ 535 Death Penalty
☐ 540 Mandamus & Other
☐ 550 Civil Rights
☐ 555 Prison Condition

Property Rights
☐ 820 Copyrights
☐ 830 Patent
☐ 840 Trademark

Federal Tax Suits
☐ 870 Taxes (US plaintiff or defendant
☐ 871 IRS-Third Party 26 USC 7609

Forfeiture/Penalty
☐ 610 Agriculture
☐ 620 Other Food &Drug
☐ 625 Drug Related Seizure of Property 21 USC 881
☐ 630 Liquor Laws
☐ 640 RR & Truck
☐ 650 Airline Regs
☐ 660 Occupational Safety/Health
☐ 690 Other

Other Statutes
☐ 400 State Reapportionment
☐ 430 Banks & Banking
☐ 450 Commerce/ICC Rates/etc.
☐ 460 Deportation

☐ 470 Racketeer Influenced & Corrupt Organizations
☐ 480 Consumer Credit
☐ 490 Cable/Satellite TV
☐ 810 Selective Service
☐ 850 Securities/Commodities/ Exchange
☐ 875 Customer Challenge 12 USC 3410
☐ 900 Appeal of fee determination under equal access to Justice
☐ 950 Constitutionality of State Statutes
☐ 890 Other Statutory Actions (if not administrative agency review or Privacy Act

| **G. Habeas Corpus/ 2255** | **H. Employment Discrimination** | **I. FOIA/PRIVACY ACT** | **J. Student Loan** |
|---|---|---|---|
| ☐ 530 Habeas Corpus-General<br>☐ 510 Motion/Vacate Sentence | ☐ 442 Civil Rights-Employment<br>(criteria: race, gender/sex, national origin, discrimination, disability age, religion, retaliation)<br><br>*(If pro se, select this deck)* | ☐ 895 Freedom of Information Act<br>☐ 890 Other Statutory Actions<br>(if Privacy Act)<br><br>*(If pro se, select this deck)* | ☐ 152 Recovery of Defaulted Student Loans<br>(excluding veterans) |

| **K. Labor/ERISA (non-employment)** | **L. Other Civil Rights (non-employment)** | **M. Contract** | **N. Three-Judge Court** |
|---|---|---|---|
| ☐ 710 Fair Labor Standards Act<br>☐ 720 Labor/Mgmt. Relations<br>☐ 730 Labor/Mgmt. Reporting & Disclosure Act<br>☐ 740 Labor Railway Act<br>☐ 790 Other Labor Litigation<br>☒ 791 Empl. Ret. Inc. Security Act | ☐ 441 Voting (if not Voting Rights Act)<br>☐ 443 Housing/Accommodations<br>☐ 444 Welfare<br>☐ 440 Other Civil Rights<br>☐ 445 American w/Disabilities-Employment<br>☐ 446 Americans w/Disabilities-Other | ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholder's Suits<br>☐ 190 Other Contracts<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | ☐ 441 Civil Rights-Voting<br>(if Voting Rights Act) |

**V. ORIGIN**

◉ 1 Original Proceeding  ○ 2 Removed from State Court  ○ 3 Remanded from Appellate Court  ○ 4 Reinstated or Reopened  ○ 5 Transferred from another district (specify)  ○ 6 Multi district Litigation  ○ 7 Appeal to District Judge from Mag. Judge

**VI. CAUSE OF ACTION (CITE THE U.S. CIVIL STATUTE UNDER WHICH YOU ARE FILING AND WRITE A BRIEF STATEMENT OF CAUSE.)**

ERISA - Complaint filed for recovery of delinquent contributions - 29 U.S.C. Sections 1002, 1132, 1145

**VII. REQUESTED IN COMPLAINT** ☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23     **DEMAND $** _____     Check YES only if demanded in complaint     **JURY DEMAND:** YES ☐ NO ☒

**VIII. RELATED CASE(S) IF ANY** (See instruction) YES ☐ NO ☒     If yes, please complete related case form.

DATE 2-13-07     SIGNATURE OF ATTORNEY OF RECORD _____

**INSTRUCTIONS FOR COMPLETING CIVIL COVER SHEET JS-44**
Authority for Civil Cover Sheet

The JS-44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. Listed below are tips for completing the civil cover sheet. These tips coincide with the Roman Numerals on the Cover Sheet.

I.   COUNTY OF RESIDENCE OF FIRST LISTED PLAINTIFF/DEFENDANT (b) County of residence: Use 11001 to indicate plaintiff is resident of Washington, D.C.; 88888 if plaintiff is resident of the United States but not of Washington, D.C., and 99999 if plaintiff is outside the United States.

III.  CITIZENSHIP OF PRINCIPAL PARTIES: This section is completed only if diversity of citizenship was selected as the Basis of Jurisdiction under Section II.

IV.  CASE ASSIGNMENT AND NATURE OF SUIT: The assignment of a judge to your case will depend on the category you select that best represents the primary cause of action found in your complaint. You may select only one category. You must also select one corresponding nature of suit found under the category of case.

VI.  CAUSE OF ACTION: Cite the US Civil Statute under which you are filing and write a brief statement of the primary cause.

VIII. RELATED CASES, IF ANY: If you indicated that there is a related case, you must complete a related case form, which may be obtained from the Clerk's Office.

Because of the need for accurate and complete information, you should ensure the accuracy of the information provided prior to signing the form.

